IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERALD PARKWAY VALLEY EQUITY GROUP, LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>    Defendant. | Case No. 24 C 3039 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Emerald Parkway Valley Equity Group, LLC has filed suit against Sun Life Assurance Company of Canada, alleging breach of contract, fraudulent misrepresentation, and fraudulent concealment. Sun Life has moved to dismiss Emerald's complaint with prejudice. For the reasons stated below, the Court denies Sun Life's motion.

## Background

Emerald purchased from Sun Life a commercial office building located at 900 Oakmont Lane and 999 Oakmont Plaza, Westmont, Illinois. The parties entered into a Purchase Agreement on June 7, 2017 that allowed for Emerald to review aspects of the building until August 8, 2017, including conducting a non-invasive visual inspection. Sun Life was also required to deliver to Emerald "any physical, engineering, soils and environmental reports prepared for [it] or in connection with the Property" that were in its

"possession or in the possession of [its] property manager," along with "all permits, approvals, certificates, notices and any outstanding applications to governmental or quasigovernmental entities, if applicable, regarding the Property" ("Reports").  Compl., Ex. 1 § 6 & Ex. B.

During the two-month investigation period, Emerald requested the Reports from Sun Life's property management company, Hiffman.  A representative of Hiffman responded to Emerald on June 21, 2017, stating, "I do not have any physical condition reports to provide."  *Id.* ¶ 14.  According to Emerald's complaint in this case, this statement was false:  Sun Life commissioned six structural engineering reports to address cracks it discovered in the building's floors and ceilings between the years 2007 to 2014, and Hiffman was in physical possession of at least some of them.  Notably, one report was commissioned shortly after a tenant of the building complained to Sun Life that there was a full penetration crack in its leased space.  Though the Reports did not suggest that the building lacked structural integrity, they did include several repair options for the cracks, which Sun Life selectively implemented, sometimes without obtaining building permits.  According to Emerald, Sun Life failed to disclose these repairs, any permits, and the underlying reports.

Also, during the investigation period, Emerald's insurance provider retained an engineering firm to prepare a property assessment of the building.  Consistent with the Purchase Agreement, the firm was limited to observing and documenting "readily-visible materials and building system defect[s] that might significantly affect the value of the subject property" and determining "if conditions exist which may have a significant impact on the continued operation of the facility during the evaluation period."  *Id.* ¶ 26.

2

The firm submitted a Freedom of Information Act (FOIA) request to the Village of Westmont to aid in its assessment, but it did not receive a response before the closing date. The assessment was produced on July 7, 2017, three weeks after Hiffman expressly informed Emerald that the Reports did not exist.

After it took possession of the building, Emerald discovered the cracks. In 2022, Hiffman, now acting as Emerald's agent, submitted a FOIA request to the Village of Westmont and retained a new structural engineer to investigate the cracking. Based on the responses to the post-sale FOIA request, Emerald discovered the existence of the omitted the pre-sale Reports. Based on the new reports, Emerald learned that the prior repairs commissioned by Sun Life were inadequate and that further repairs would be costly. Emerald suggests that Sun Life's prior repairs were inadequate, in part, due to the quality of the Reports. Specifically, Emerald alleges the structural engineer tasked with assessing whether the building had systemic structural failures had a conflict of interest, as it was one of the building's original engineers. Later in December 2023, Emerald learned that Hiffman was in physical possession of some of those Reports at the time Sun Life sold the building.

Emerald filed the present lawsuit against Sun Life alleging breach of contract, fraudulent misrepresentation, and fraudulent concealment. Emerald alleges that had Sun Life properly disclosed the Reports, Emerald "could have investigated for itself and/or requested some invasive testing from Seller, and: (1) terminated the Agreement; (2) negotiated a lower price for the purchase of the [b]uilding based on the repairs needed; or (3) required Seller to undertake repairs prior to closing." *Id.* ¶ 59. Sun Life has moved to dismiss Emerald's complaint with prejudice and seeks an award of

3

attorneys' fees under a provision of the parties' contract.

Certain sections of the parties' Purchase Agreement are relevant to the determination of Sun Life's motion. Section 5 of the Purchase Agreement governs Sun Life's duty to deliver certain documents to Emerald. Section 5 states:

> Within five (5) days after the Effective Date, Seller agrees to make the documents set forth on Exhibit B . . . available to Purchaser in an online data room. To the extent that Purchaser determines that any of the Materials have not been made available or delivered to Purchaser pursuant to this Section 5, Purchaser shall notify Seller and Seller shall use commercially reasonable efforts to deliver the same to Purchaser within five (5) Business Days after such notification is received by Seller.

*Id.*, Ex. 1 § 5. Exhibit B to the Purchase Agreement states:

> To the extent in Seller's possession or in the possession of Seller's property manager, copies of all permits, approvals, certificates, notices and any outstanding applications to governmental or quasi-governmental entities, if applicable, regarding the Property [and] [t]o the extent in Seller's possession or in the possession of Seller's or property manager, any physical, engineering, soils and environmental reports prepared for Seller or in connection with the Property.

*Id.*, Ex. 1, Ex. B.

Section 6 of the Purchase Agreement contains a list of "Representations and Warranties of Seller," none of which pertain to Sun Life's duty to deliver the Reports to Emerald, and all of which expired nine months from the date of closing on the property. *Id.*, Ex. 1 § 6.

Section 11 states that Emerald purchased the building on an "AS-IS" basis:

> Condition of Property. PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY SET FORTH HEREIN, THE PROPERTY IS BEING CONVEYED BY SELLER IN "AS-IS" CONDITION, THAT PURCHASER IS FULLY FAMILIAR WITH THE CONDITION OF THE PROPERTY, AND THAT PURCHASER IS BUYING THE PROPERTY BASED SOLELY ON PURCHASER'S KNOWLEDGE OF THE PROPERTY AND NOT IN RELIANCE ON ANY REPRESENTATION MADE BY SELLER OR ANY EMPLOYEE OR AGENT OF SELLER. SELLER EXPRESSLY DISCLAIMS ANY REPRESENTATIONS OR

4

> WARRANTIES OF ANY KIND REGARDING THE PROPERTY EXCEPT AS EXPRESSLY SET FORTH HEREIN AND THE WARRANTIES SET FORTH ON THE DEED, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATIONS OR WARRANTIES REGARDING THE PHYSICAL CONDITION OR ENVIRONMENTAL COMPLIANCE OF THE PROPERTY.

*Id.*, Ex. 1 § 11. Section 11 also contains a waiver and release of rights:

> EXCEPT TO THE EXTENT OF THE REPRESENTATIONS AND WARRANTIES OF SELLER EXPRESSLY SET FORTH IN THIS AGREEMENT AND THE WARRANTIES OF TITLE SET FORTH ON THE DEED, AND UNLESS A THIRD PARTY OR GOVERNMENTAL CLAIM IS MADE AGAINST PURCHASER OR ITS SUCCESSORS OR ASSIGNS, BUT OTHERWISE NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT TO THE CONTRARY, PURCHASER . . . WAIVES ITS RIGHT TO RECOVER FROM, AND FOREVER RELEASES AND DISCHARGES, SELLER . . . FROM ANY AND ALL DEMANDS, CLAIMS, LEGAL OR ADMINISTRATIVE PROCEEDINGS, LOSSES, LIABILITIES, DAMAGES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS OR EXPENSES WHATSOEVER . . . WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, WHICH MAY ARISE ON ACCOUNT OF OR IN ANYWAY BE CONNECTED WITH THE PHYSICAL CONDITION OF THE PROPERTY OR ANY LAW OR REGULATION APPLICABLE THERETO . . . .

*Id.*

## Discussion

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (internal quotation marks omitted). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

### A. Fraudulent misrepresentation and concealment

Sun Life argues that Emerald has not, and cannot, allege claims for fraudulent misrepresentation and concealment. Specifically, Sun Life argues that Emerald fails to plausibly allege the essential elements of justifiable reliance and material

5

misrepresentation or omission.

"To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Muhammad v. Bailey*, 2024 IL App (1st) 230702-U, ¶ 27 (internal quotation marks omitted). Similarly, to state a claim for fraudulent concealment, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Moore v. Pendavinji*, 2024 IL App (1st) 231305, ¶ 33.

1. **Justifiable reliance**

Sun Life argues that Emerald cannot show justifiable reliance because it had ample opportunity to inspect the structural integrity of the building, commission a conditions report, and/or learn of any issues related to the building through public records.

"Failure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation . . . and fraudulent concealment of material fact." *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 709, 767 N.E.2d 376, 386 (2002). "In determining whether reliance was justifiable, all of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." *Findlay v. Chicago Title Ins. Co.*, 2022 IL App (1st) 210889, ¶ 90, 215 N.E.3d 1006, 1024, *as modified on denial of reh'g* (Nov. 3, 2022). But the question of justifiable reliance "is a question of fact that is to be determined by the finder of fact

6

and not by the trial court as a matter of law." *Schrager*, 328 Ill. App. 3d at 709, 767 N.E.2d at 386 (internal quotation marks omitted). The exception to this rule is "where it is apparent from the undisputed facts that only one conclusion can be drawn." *Mandile v. Basta*, 2023 IL App (2d) 220329-U, ¶ 28.

The factual allegations in the complaint support more than one conclusion regarding justifiable reliance. "[J]ustifiable reliance exists when it was reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (internal quotation marks omitted). According to Emerald, Sun Life deliberately withheld the Reports that would have led Emerald to discover the cracks in, and repairs to, the building. A representative of Sun Life's agent, Hiffman, told Emerald, "I do not have any physical condition reports to provide." Compl. ¶ 56. A jury could find that Emerald reasonably relied on Hiffman to deliver the Reports because Sun Life expressly agreed to do so in the Purchase Agreement. Indeed, "[w]here the person making the statement has inhibited plaintiffs inquiries by creating a false sense of security the failure to inquire into facts that could be made available to the plaintiff is not fatal." *Schrager*, 328 Ill. App. 3d at 709–10, 767 N.E.2d at 387 (internal quotation marks and alterations omitted).

Sun Life argues that Emerald could not have justifiably relied on Hiffman because the information found in the Reports were plainly discoverable by Emerald's "own pre-sale FOIA request," "examination of the records, including the Reports themselves," and "observation of the alleged cracks in the exterior of the [b]uilding." Def.'s Mot. to Dismiss at 1–2. But the allegations in the complaint do not support a

7

determination of these points in Sun Life's favor at this stage of the case. First, though the allegations in the complaint state that the Reports could have been discovered through a FOIA request (they ultimately were discovered through Hiffman's post-sale FOIA request), nothing in the complaint suggests the Village of Westmont would have disclosed the Reports as part of Emerald's pre-sale FOIA request. The scope of Emerald's pre-sale investigation was limited, and its FOIA request could have similarly been limited. At the pleading stage, the Court must take Emerald's allegations as true. Second, Emerald alleges that some of the Reports were with Hiffman, in Hiffman's on-site office, during the investigation period while Hiffman was still acting as Sun Life's agent. Emerald asked Hiffman for the Reports, and Hiffman denied their existence. Thus based on the complaint's allegations, the only way Emerald could have found and reviewed the Reports during the investigation period was to disbelieve Hiffman's statements and insists on a further investigation. But "it is reasonable to rely on a misrepresentation if nothing impugns its veracity." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018). Third, Emerald alleges the cracks were not discoverable through an inspection of the building without disrupting tenants or conducting invasive testing, which were prohibited by the Purchase Agreement. As such, the Court cannot say at this point that Emerald could have discovered the cracks from an inspection.

In sum, based on the allegations of the complaint, the Court cannot say as a matter of law that Emerald entered "a transaction with [its] eyes closed to available information." *Lindy Lu LLC v. Illinois Cent. R. Co.*, 2013 IL App (3d) 120337, ¶ 26, 984 N.E.2d 1171, 1176–77. As such, justifiable reliance remains a question for a trier of

fact.

2. **Materiality**

Next Sun Life argues that Emerald cannot show the materiality of the claimed misrepresentations and omissions. The basis for Sun Life's argument is that the Reports do not show that the building was structurally unsound or that the repairs Sun Life commissioned were inadequate. As with justifiable reliance, however, "[t]he materiality of a misrepresentation [or omission] is a question of fact." *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 154, 938 N.E.2d 1181, 1188 (2010). And as previously explained, the factual allegations in Emerald's complaint do not warrant taking this question away from the finder of fact.

In any case, Sun Life misunderstands Emerald's claims. A "material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision regarding the purchase of the product." *Wernikoff v. Health Care Serv. Corp.*, 376 Ill. App. 3d 228, 234, 877 N.E.2d 11, 16 (2007). Emerald alleges that had it known of the Reports, it would have commissioned its own structural analysis of the building, and, depending on the results of that analysis, would have asked for a reduction of the purchase price, requested repairs, or decided not to go through with the purchase. The Court cannot say at this point that information about a building's persistent cracking and repairs would have no value in negotiations, regardless of the building's ultimate structural soundness.

**B.  Breach of contract**

Sun Life argues that Emerald cannot state a claim for breach of contract. "In a

9

breach of contract action, a plaintiff must allege and prove the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury to the plaintiff." *Xcel Supply, LLC v. Horowitz*, 2017 IL App (1st) 152277-U, ¶ 46 (internal quotation marks omitted).

### 1. Merger doctrine

Sun Life argues that the merger doctrine bars Emerald's breach of contract claim. "The merger doctrine is a common law doctrine that provides that the provisions in a contract for the sale of real property are merged into a subsequently executed deed." *1400 Museum Park Condo. Ass'n by Bd. of Managers v. Kenny Constr. Co.*, 2021 IL App (1st) 192167, ¶ 21, 200 N.E.3d 798, 807–08. Unless the deed contains a reservation of rights provision, "all prior agreements between a buyer and a seller are merged in the deed upon its acceptance" and "[t]he deed supersedes the provisions of the real estate contract and becomes the only binding instrument between the parties." *Czarobski v. Lata*, 227 Ill. 2d 364, 369, 882 N.E.2d 536, 539–40 (2008).

Sun Life argues its obligation to deliver the Reports did not survive the sale of the building because the deed superseded the provisions of the Purchase Agreement. But an exception to the merger doctrine exists "where the party claims that a mutual mistake or fraud existed at the time of conveyance of the deed." *Id.* at 372, 882 N.E.2d at 541. And, as discussed in the previous section, Emerald sufficiently states claims for fraudulent misrepresentation and concealment. Accordingly, this exception to the merger doctrine applies here.

Similarly, the Court is unpersuaded by Sun Life's argument that the only

10

obligations that survived the merger were those expressly stated in the Purchase Agreement's representations and warranties section. It is not the case, as Sun Life suggests, that the only contractual obligations that survive the merger doctrine are express warranties. "Some such separate and independent contract provisions which have been held not to have merged in the subsequent deed are: an implied warranty of habitability; express warranties as to quality of the improvement; and, an agreement to complete unfinished building on premises." *Harris Tr. & Sav. Bank v. Chicago Title & Tr. Co.*, 84 Ill. App. 3d 280, 284, 405 N.E.2d 411, 415 (1980) (internal citations omitted). Like these provisions, Sun Life's obligation to deliver the Reports were separate and independent contract provisions and survived any such merger.[1]

2. **Non-reliance clause**

Next Sun Life argues Emerald's breach of contract claim is barred by the Purchase Agreement's "AS-IS" provision. The Court is unpersuaded that a contractual provision stating that Sun Life is purchasing the property on an "as-is" basis precludes it from maintaining a claim for breach of the contract's separate provision obligating Sun Life to turn over physical and engineering reports concerning the property. The Court acknowledges that the "as-is" clause might affect the damages recoverable for breach of the report-turnover provision, but that is not a basis to dismiss the breach of contract claim for failure to state a claim.

3. **Causation and damages**

Finally, Sun Life argues that Emerald cannot show causation or damages. "In a

---

[1] For the same reason, the Court concludes the nine-month limitations period found in the Purchase Agreement's representations and warranties section does not govern Emerald's breach of contract claim.

11

breach of contract case, a plaintiff must establish an actual loss or measurable damages resulting from the breach in order to recover." *Ivey v. Transunion Rental Screening Sols., Inc.*, 2021 IL App (1st) 200894, ¶ 39, 186 N.E.3d 1076, 1085 (internal quotation marks omitted).

The basis for Sun Life's arguments is that the Reports do not state that the building was structurally unsound or that the repairs undertaken by Sun Life were inadequate. In other words, Sun Life takes the position that the Reports would not have put Emerald on notice of the cracking problems that it has identified post-sale. Again, Sun Life misunderstands Emerald's claims. Emerald alleges not that it would have taken the information in the Reports at face value but rather that it would have acted differently if Sun Life had produced the Reports. Indeed, Emerald specifically alleges that the information in the Reports was suspect, noting (as discussed earlier) that the structural engineer who prepared the Reports had a conflict of interest that could have led him to understate the problems. Instead, Emerald alleges that Sun Life's breach prevented it from undertaking its own investigation and possibly, terminating the Purchase Agreement, negotiating a lower price, or requiring Sun Life to undertake repairs before closing. These allegations are sufficient to plausibly allege causation and damages.

The Court is unpersuaded by Sun Life's reliance on *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 876 N.E.2d 218 (2007). In *Kopley*, the buyer claimed that it sustained damages in the form of repair costs because the seller failed to disclose an engineering report. The court rejected the buyer's claim because "nowhere within the agreement [between the parties] did the [s]eller agree to

12

provide that report," and nothing in that report would have informed either party of the "repairs for which the [b]uyer [sought] damages." *Id.* at 1014–15, 876 N.E.2d at 226. In this case, by contrast, the Purchase Agreement is alleged to have obligated Sun Life to deliver the Reports, and Emerald alleges the Reports would have put it on notice of the cracks in the building and of the need for repair.

Sun Life further argues that Emerald cannot rely on future repairs to show damages because it no longer owns the building. As the Court has explained, Emerald's damages claim appears to be based not on the cost of future repairs but rather economic losses related to its purchase of the building. Accordingly, the Court does not find Emerald's breach of contract claim deficient on this basis.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [dkt. no. 13]. Defendant is directed to answer the complaint by no later than November 20, 2024. The telephonic status hearing set for November 1, 2024 is vacated and reset to December 16, 2024 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729. A joint status report concerning the progress of discovery and any settlement discussions is to be filed on December 9, 2024.

Date: October 28, 2024

_____
MATTHEW F. KENNELLY
United States District Judge