IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMERALD PARKWAY VALLEY EQUITY GROUP, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 24 C 3039 ) |
| SUN LIFE ASSURANCE CO. OF CANADA, | ) ) |
| Defendant and Third Party Plaintiff, | ) ) ) |
| vs. | ) ) |
| HIFFMAN ASSET MANAGEMENT LLC, | ) ) |
| Third Party Defendant. | ) |

## ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Emerald Parkway Valley Equity Group, LLC sued Sun Life Assurance Co. of Canada in April 2024, alleging breach of contract and fraud in connection with Sun Life's sale to Emerald of a commercial office building in Westmont, Illinois. Emerald's claims concern Sun Life's alleged concealment and/or nondisclosure of cracks in the building's foundation that Emerald contends threaten its structural integrity. In early December 2024, Sun Life, in turn, filed a third-party complaint against Hiffman Asset Management LLC, which had served as property manager for Sun Life, seeking indemnity and/or contribution. The Court notes that Hiffman continued to manage the property for Emerald for at least some period after the sale (it is unclear to the Court whether that arrangement is still in place today). Unless the Court has missed something, Emerald

has not asserted its own claim against Hiffman.

Sometime earlier this year, Emerald caused repairs to be made to the property, evidently to attempt to correct the problem(s) that gave rise to this lawsuit. Sun Life says it was kept in the dark about this. Sun Life has alleged that Emerald's actions constitute "spoliation," but it has not yet sought any sort of sanction for this.

The dispute currently before the Court involves a subpoena for documents and testimony that Sun Life issued to Raths, Raths & Johnson, Inc., an engineering firm. At some point before May 2024, Hiffman (which was not then a party in this lawsuit) evidently retained Structure Evaluation Engineers, Inc. to perform an assessment and make appropriate recommendations for repairs. SEE evidently concluded that repairs were called for. Based on the record before the Court, it appears that Hiffman then contacted RRJ in May 2024, seeking to retain it to conduct a "peer review' of SEE's recommendation, in other words, to assess whether SEE's recommendation was appropriate. At that point or shortly after, Hiffman sent RRJ several documents prepared by SEE for its review.

On July 8, 2024, RRJ sent Hiffman a proposal for the services it had been asked to perform. It is relatively clear from the context of the letter that RRJ had not actually performed an independent analysis or reached any conclusions at this point. It is not apparent from the record before the Court what, if anything, happened in response to RRJ's proposal to Hiffman. But the Court has not been provided anything indicating that Hiffman signed off on the proposal or otherwise accepted it.

Based on the record, it appears that on or about August 29, 2024, Faegre Drinker Biddle & Reath LLP, the law firm representing Emerald in this lawsuit, began

2

discussions with RRJ to retain it as a consulting expert in connection with the present lawsuit. In late September 2024, Faegre entered into an agreement for professional services with RRJ. The agreement described the work as follows:

> The Scope of RRJ Services is: To provide structural engineering consulting services including a peer review of SEE engineering reports and calculations regarding alledged [sic] precast concrete floor plank cracking, prepare a written report of our findings and attend a two-hour virtual meeting regarding the structure located at 900 Oakmont Lane in Westmont, Illinois per the RRJ proposal dated July 8, 2024 (Attachment 3).

See Dkt. no. 101-3, ECF p. 2 of 10. The agreement attached the July proposal that RRJ had made to Hiffman. The RRJ-Faegre agreement was executed by the president of RRJ and by one of the trial counsel with the Faegre firm, as well as a representative of Emerald Valley (under a heading entitled "Responsibility for Payment (if different from agreement approval signature)." The agreement was fully executed as of September 30, 2024.

According to Emerald, Faegre advised RRJ on or about April 8, 2025 that its serves were no longer needed.

Sun Life issued a subpoena for testimony and records to RRJ on May 15, 2025. Emerald/Faegre has invoked the work product privilege and well as the protection against disclosure of consulting, non-testifying experts, for communications and work product from August 29, 2024 through April 8, 2025. Sun Life argues that: (1) the consultant privilege does not apply because RRJ was originally retained for business purposes, not litigation consulting, and its purported consulting assignment duplicated its business assignment; (2) Emerald waived any privilege by directing Hiffman and RRJ to communicate; (3) if privileged, the exception for information that Sun Life cannot practicably obtain by other means applies; and (4) no privilege applies to materials

3

predating the September 25, 2024 RRJ-Faegre agreement or postdating the end of RRJ's services on April 8, 2025. The Court addresses each of these points in turn.

      1.      It is true that Hiffman initially sought to retain RRJ not for litigation purposes but in a business capacity. It is also true that Faegre's later retention of RRJ involved the same scope of work for which Hiffman had initially sought to retain RRJ. And if RRJ had actually been retained *and* performed services for Hiffman, Emerald and Faegre would not be able to toss a privilege cloak over that work by later retaining RRJ to consult on the lawsuit. *See, e.g., Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411, 414-15 (E.D.N.Y. 1978). But there is nothing in the record that indicates RRJ actually performed work pursuant to the earlier Hiffman proposal, aside from whatever review of materials RRJ had to do in order to draft its proposal in the first place. Rather, as best as the Court can determine from the materials that have been presented, all of RRJ's actual work postdated its retention by Faegre. Thus even if some earlier work was *contemplated* that would fall outside the consulting expert privilege, none was actually *done*. For these reasons, the fact that Hiffman had earlier sought to retain RRJ does not render the consulting expert privilege inapplicable for the work that RRJ did after it was retained by Faegre.

      2.      Sun Life contends that by asking Hiffman, which was supposedly an adverse party in litigation at that point, to reach out to RRJ in late December 2024, *see* Dkt. no. 99-9 (e-mails), Faegre waived any privilege that might otherwise apply. The Court does not agree. From the context of the emails, it appears that Faegre was having trouble getting through to RRJ and asked Hiffman, which had introduced RRJ to the law firm, to help out in getting RRJ to communicate. *See id.*, ECF p. 4 of 5. That

4

request did not contemplate the disclosure of privileged material, nor would one reasonably believe that Hiffman's email would prompt the disclosure of privileged material: Hiffman merely asked RRJ, "Could you please let me know how best to connect you with the client? *Id.* Thus Emerald's request to Hiffman to intervene did not operate as a waiver of any privilege over the contents of RRJ's work. Finally on this point, the fact that RRJ answered Hiffman's email by disclosing—unsolicited—certain contents of its work is not a waiver either; only the privilege holder (here Faegre) can waive a privilege, and Faegre did not do so. Hiffman's "how to connect you" request did not call for the communication of anything of substance.

The Court also notes that Sun Life's contention that Hiffman was, by December 2024, adverse *to Emerald* in the litigation is, charitably put, an overstatement. *Sun Life* is adverse to Hiffman because it has asserted claims attempting to shift to Hiffman all or part of any liability that Sun Life may have to Emerald, but without more that does not make Hiffman and Emerald adverse. Indeed, it is more likely that Emerald and Hiffman have a common interest in opposing Sun Life's attempt to shift liability.

3. Work product protection regarding an expert employed only for trial preparation—which is the situation with RRJ at this point—may be overcome "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). When asked at the hearing on the present motion how this was so, Sun Life said that because any repair work was done without its knowledge, it was unable to observe the property's condition before or during the repair work. Perhaps not, but that's not enough to establish the Rule's predicate for disclosure. Furthermore, there is

5

at least some indication that there are photographs and other reports regarding the property's condition before the repairs and information that are available from other sources—including SEE Construction—regarding what the areas to be repaired looked like and what repair work was done, why, and how.  When asked about this at the hearing, Sun Life's counsel advised that discovery was ongoing vis-à-vis SEE and that a deposition was scheduled for the near future.  Given these facts, at this point the Court is unpersuaded that Sun Life has made the necessary showing under the Rule.  Sun Life may refile its motion, if appropriate, once it has reasonably explored alternative sources for the information that it says it needs from RRJ.

4. The Court concludes that the appropriate start date for Faegre/Emerald's assertion of the privilege is, as they argue, the date on which Faegre first approached RRJ to retain the firm for purposes of the litigation.  On the present record, that appears to be August 29, 2024.

5. The Court reviewed *in camera* certain materials that were produced by RRJ pursuant to Sun Life's subpoena that Emerald has asked to "claw back."  The materials constitute correspondence between RRJ, Emerald, and Faegre over how RRJ should respond to Sun Life's recent subpoena.  It is quite unclear to the Court why either side cares about these items.  There is nothing substantive in any of them, at least as far as the Court can tell:  they all involve whether, when, and how RRJ should respond to the subpoena, and nothing more.  But that aside, they are not privileged, so the Court denies the request to claw them back.  (The Court further notes that because these items are not privileged, their disclosure by RRJ, which is not the privilege holder in any event, cannot be claimed to work a waiver of privilege on anything it *does* cover.)

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for a protective order [dkt. no. 101]. The motion hearing set for July 7, 2025 is vacated.

Date: June 30, 2025

_____
MATTHEW F. KENNELLY
United States District Judge